1
2
3
4
5
6                          **UNITED STATES DISTRICT COURT**

7                               **DISTRICT OF NEVADA**

8

9    DAVID MICHAEL STEINHAUER,              )
                                            )
10                  Petitioner,             )        3:08-cv-00619-LRH-VPC
                                            )
11   vs.                                    )
                                            )        **ORDER**
12   E. K. McDANIEL, *et al.,*              )
                                            )
13                  Respondents.            )
     _____/

14

15          This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a

16   state prisoner, is proceeding *pro se.* The case proceeds on the petition filed on March 31, 2009.  (ECF

17   No. 12.)  The case is before the court for resolution on the merits.

18   **I. Jurisdiction**

19          Before turning to the merits of the petition, the court addresses whether it retains jurisdiction to

20   decide the merits of the petition because of petitioner's notice of appeal filed April 22, 2011.  On April

21   6, 2011, this court issued an order denying petitioner's motions for stay and counsel. (ECF No. 69.)  The

22   court denied petitioner's motion for stay because petitioner failed to show that the discovery that he

23   wished to pursue was related to his own criminal conviction or sentence.  (*Id*.)  Additionally, the court

24   denied petitioner's motion for counsel to assist in facilitating discovery.  (*Id*.)  Petitioner appealed this

25   decision (ECF No. 70), and the case remains pending with the Ninth Circuit Court of Appeals.

26          Generally, the filing of a notice of appeal divests a district court of jurisdiction over those aspects

27   of the case involved in the appeal.  *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58

28   (1982) (per curiam) ("The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and

divests the district court of its control over those aspects of the case involved in the appeal."). However, when a notice of appeal "is defective in that it refers to a non-appealable interlocutory order, it does not transfer jurisdiction to the appellate court, and so the ordinary rule that the district court cannot act until the mandate has issued on the appeal does not apply." *Nascimento v. Dummer*, 508 F.3d 905, 908 (9th Cir. 2007) (citation omitted). Thus, where the deficiency in a notice of appeal "is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction." *Ruby v. Secretary of the Navy*, 365 F.2d 385, 388-89 (9th Cir. 1996). In short, "[f]iling an appeal from an unappealable decision does not divest the district court of jurisdiction." *U.S. v. Hickey*, 580 F.3d 922, 928 (9th Cir. 2009).

In this case, it is clear that the court's order denying petitioner's motions for stay and counsel is not an appealable order, and thus, petitioner's notice of appeal is defective. *See In re Subpoena served on California Public Utilities Com.*, 813 F.2d 1473, 1476 (9th Cir. Cal. 1987) ("The general rule is that orders regarding discovery . . . are normally deemed interlocutory and reviewable only on appeal from a final judgment."); *see Weygandt v. Look*, 718 F.2d 952, 953-54 (1983) (denial of counsel in a habeas corpus proceeding is not an appealable interlocutory order). Because petitioner's notice of appeal is clearly defective, this court retains jurisdiction to consider his petition on the merits.

**II. Background and Procedural History**

On May 18, 2001, Taunya Owens left the Club Cal-Neva some time before midnight after finishing her shift as a cocktail waitress. (Exhibits to Answer Ex. 85 at 56-57.)[1] According to Owens, she and a coworker gambled for a short time, and she consumed approximately two alcoholic beverages. (*Id*.) Owens had recently moved out of a residence she shared with her partner and was staying with friends at the Olympic Motel. (*Id*. Ex. 85 at 51-52.) After leaving, Owens and her coworker walked together in the same direction but then parted ways. (*Id*. Ex. 85 at 57.) After arriving at the Olympic Motel at some time after midnight, Owens found herself locked out of her room and without a key, so she made a telephone call to her partner while waiting for her friends to arrive and let her into the room. (*Id*. Ex. 85 at 58-59.) While on the telephone, Owens was approached by petitioner, David Michael

---

[1]   The exhibits referenced in this order are found in the court's record at ECF Nos. 38, 56-62.

Steinhauer.  (*Id*. Ex. 85 at 59.)  Owens told petitioner she was locked out of her room, and petitioner offered to drive her in his truck to get some cigarettes while he purchased some beer.  (*Id*. Ex. 85 at 60.) Owens recognized petitioner from having served him on one occasion at the Cal-Neva and agreed to go with him.  (*Id*. Ex. 85 at 61-62.)  Petitioner drove to a mini-mart and purchased beer while Owens used the restroom.  (*Id*. Ex. 85 at 61-65.)  Owens testified that petitioner then drove in the opposite direction of the Olympic Motel stating the he was driving around to give Owens' friends more time to return.  (*Id*. Ex. 85 at 65-66.)  Owens testified that after driving in several different directions, petitioner drove to a secluded road off of Mayberry Drive.  (*Id*. Ex. 85 at 66-72.)  During the drive, Owens asked to be taken home several times as she became increasingly uncomfortable.  (*Id*.)  At one point during the drive, petitioner inquired if Owens would have sex with him.  (*Id*.)  According to Owens, she told petitioner that his chances were slim to none because she was in a lesbian relationship, and she didn't want to have sex with him.  (*Id*.)  According to Owens, after arriving at the secluded road, she asked to be taken home, and petitioner told her he would take her home after going to the bathroom.  (*Id*. Ex. 85 at 72.)  Owens testified that petitioner walked away from the truck and returned a couple of minutes later.  (*Id*. Ex. 85 at 73.)  Owens testified that after returning to the truck, petitioner grabbed her, spun her around, pinned her to the bench seat of the truck, and placed his hand over her throat.  (*Id*. Ex. 85 at 74-75.)  Owens testified that she feared for her life and asked petitioner to stop, but that petitioner told her that "all women are prick teasers and deserved it."  (*Id*. Ex. 85 at 75-76.)  According to Owens, petitioner sexually assaulted her. (*Id*. Ex. 85 at 76-80.)

Owens testified that she feared for her life after the assault because petitioner told her he would rather do life in prison for murder than do time for rape.  (*Id*. Ex. 85 at 80.)  After convincing petitioner that she would not tell anyone what happened, Owens testified that petitioner drove her back to the Olympic Motel, apologized to her, gave her his number, and said he wanted to take her out the next day. ( *Id*. Ex. at 80-83.)  According to Owens, she got out of petitioner's truck, took down his license plate number, and went to her room, which was now unlocked.  (*Id*. Ex. 85 at 83-84.)  Owens stated that she entered the room at approximately 3:00 a.m. and that no one else was there.  (*Id*. Ex. 85 at 85.)  At some point, Owens called a crisis center, told them what had happened, and in response to their advice, went to the Northern Nevada Medical Center for an examination.  (*Id*. Ex. 85 at 86-93.)

1    At trial, in support of his defense that he and Owens had engaged in consensual sex, petitioner

2    testified that he had met Owens at the Cal-Neva and had spoken with her several times.  (*Id*. Ex. 87 at

3    8-9.)  Petitioner testified that Owens led him to believe she was a prostitute.  (*Id*. Ex. 87 at 9.)

4    According to petitioner, he exchanged drugs for sex with Owens on several occasions.  (*Id*. Ex. 87 at 10.)

5    Petitioner testified that on the night of May 18, 2001, he went to the Olympic Motel to meet Owens at

6    an agreed upon time of 1:00 a.m.  (*Id*. Ex. 87 at 11.)  Petitioner testified that he and Owens went in his

7    truck to purchase beer and then drove to Idlewild Park where they had consensual sex in his truck.  (*Id*.

8    Ex. 87 at 11-13.)  According to petitioner, he had told Owens that he had some drugs for her before they

9    had sex, but afterward, he told her he did not have any.  (*Id*. Ex. 87 at 14.)  Petitioner stated that Owens

10   had a fit in response and that she threatened him by saying she would go to the police.  (*Id*. Ex. 87 at 14.)

11   Petitioner testified that after Owens calmed down, he offered to go get her drugs, but that he didn't have

12   any money to do so.  (*Id.* Ex. 87 at 16.)  Petitioner testified that Owens gave him her tip money and that

13   he drove off and did not come back.  (*Id*.)

14   Following a jury trial in the Second Judicial District Court for the State of Nevada, petitioner was

15   convicted on June 6, 2002, of first-degree kidnaping and sexual assault.  (Exhibits to Answer Ex. 88,

16   89, 90.)  The district court adjudicated petitioner a habitual criminal and sentenced him to serve a term

17   of life in the Nevada State Prison without possibility of parole.  (*Id*. Ex. 99.)  Petitioner filed a direct

18   appeal.  (*Id*. Ex. 101.)  The Nevada Supreme Court affirmed petitioner's judgment and sentence on June

19   5, 2003.  (Exhibits to Mot. to Dismiss Ex. 6.)  Remittitur issued on July 1, 2003.  (*Id*.  Ex. 8.)

20   On July 21, 2003, petitioner filed a *pro se* post-conviction petition for writ of habeas corpus in

21   the Second Judicial District Court.  (Exhibits to Answer Ex. 109.)  On November 2, 2005, petitioner

22   filed a supplemental post-conviction petition through counsel.  (*Id*. Ex. 133.)  The district court denied

23   post-conviction relief on October 13, 2006.  (*Id*. Ex. 137.)

24   Petitioner appealed from the denial of his petition.  (Exhibits to Mot. to Dismiss Ex. 9.)  On

25   March 6, 2008, the Nevada Supreme Court affirmed the denial of post-conviction relief and remanded

26   the matter for a new sentencing hearing because the state court had failed to impose a sentence for both

27   crimes of which petitioner had been convicted.  (*Id*. Ex. 12.)

28   On November 20, 2007, petitioner filed a second post-conviction petition.  (Exhibits to Answer

4

1   Ex. 155, Ex. 156.)  The district court denied the petition on February 5, 2008.  (*Id.* Ex. 158.)  Petitioner

2   appealed from the denial of his second state petition.  (Exhibits to Mot. to Dismiss Ex. 15.)  On October

3   28, 2008, the Nevada Supreme Court affirmed the denial of the petition.  (*Id.* Ex. 16.)  Remittitur issued

4   November 25, 2008.  (*Id.* Ex. 18.)

5           Petitioner filed his federal petition for writ of habeas corpus in this court on November 21, 2008.

6   (ECF No. 1.)   On July 20, 2010, this court issued an order concluding that: (1) ground one is

7   unexhausted; (2) ground two is unexhausted; (3) ground three is unexhausted to the extent that is based

8   on the Fifth Amendment and to the extent that the"relevant sexual history of the victim" can be

9   construed to be broader than the claim considered by the Nevada Supreme Court that "trial counsel was

10  ineffective for failing to present evidence of the victim's bisexuality or evidence pertaining to the

11  identity of the biological father of the child the victim delivered two months before trial;"(4)  ground

12  four is unexhausted to the extent that it is based on the Fifth Amendment; (5) ground five is unexhausted

13  to the extent that it is based on Fifth or Eighth Amendments or on claims that a conflict of interest

14  existed because petitioner reported his counsel to the state bar or that his counsel harbored animosity

15  which caused him  to remain quiet on crucial matters; (6) ground six is unexhausted; and (7) ground

16  seven is procedurally barred.  (ECF No. 51.)  The court dismissed ground seven with prejudice.  (*Id.*)

17  On August 9, 2010, petitioner filed a declaration of election to abandon his unexhausted claims.  (ECF

18  No. 52.)  Respondents filed an answer to the remaining grounds on September 15, 2010.  (ECF No. 55.)

19  **III.    Federal Habeas Corpus Standards**

20          The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides

21  the legal standard for the court's consideration of this habeas petition:

22                  An application for a writ of habeas corpus on behalf of a person in
                    custody pursuant to the judgment of a State court shall not be
23                  granted with respect to any claim that was adjudicated on the merits
                    in State court proceedings unless the adjudication of the claim –
24
                    (1) resulted in a decision that was contrary to, or involved an
25                  unreasonable application of, clearly established Federal law, as
                    determined by the Supreme Court of the United States; or
26
                    (2) resulted in a decision that was based on an unreasonable
27                  determination of the facts in light of the evidence presented in the
                    State court proceeding.
28

5

1    The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in

2    order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

3    extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court decision is

4    contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if

5    the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases"

6    or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the

7    Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent."

8    *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000)

9    and citing *Bell,* 535 U.S. at 694 (2002)).

10    A state court decision is an unreasonable application of clearly established Supreme Court

11    precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing

12    legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts

13    of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).  The

14    "unreasonable application" clause requires the state court decision to be more than merely incorrect or

15    erroneous; the state court's application of clearly established federal law must be objectively

16    unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

17    In determining whether a state court decision is contrary to, or an unreasonable application of

18    federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S.

19    797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534

20    U.S. 944 (2001).  Moreover, "a determination of a factual issue made by a State court shall be presumed

21    to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by

22    clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

23    **IV.  Discussion**

24        **A.  Ground Three**

25    In ground three, petitioner claims that his trial counsel was ineffective in violation of his rights

26    under the Sixth and Fourteenth Amendments to the United States Constitution for failing to present

27    evidence of the victim's bisexuality or evidence pertaining to the identity of the biological father of the

28    child of the victim delivered two months before trial.

Respondents argue that trial counsel's performance did not fall below an objective standard of reasonableness because: (1) petitioner fails to point to specific evidence of the victim's sexual history that counsel should have introduced; and (2) the paternal status of the victim's child was not material to petitioner's defense that the sexual encounter between him and the victim was consensual.

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland,* the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court recently described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster,*

131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)).  The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted).  Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen*, 131 S.Ct. at 1398-1401.

In addressing petitioner's claim at issue here, the Nevada Supreme Court stated:

> In his petition, Steinhauer also claimed he received ineffective assistance of trial and appellate counsel.  The question of whether a defendant received ineffective assistance of counsel is a mixed question of law and fact and is subject to independent review.  A petitioner alleging ineffective assistance of counsel "must establish the factual allegations which form the basis for his claim of ineffective assistance by a preponderance of the evidence."
>
> First, Steinhauer claimed that trial counsel was ineffective for failing to present evidence of the victim's bisexuality or evidence pertaining to the identity of the biological father of the child the victim delivered two months before trial.  The district court dismissed this claim on the basis that the claim was insufficiently pled.  The district court specifically found that Steinhauer failed to provide the evidentiary or factual support necessary to grant an evidentiary hearing on this claim.  We conclude that the district court correctly determined that this claim was not sufficiently pled, and therefore, the district court did not err by dismissing this claim without conducting an evidentiary hearing.

(Exhibits to Mot. to Dismiss Ex. 12. at 3.)

Assuming without deciding that counsel performed below an objective standard of reasonableness, petitioner fails to show that he suffered prejudice.  Petitioner claims that counsel was ineffective for failing to bring out the fact that the victim, who delivered a child two months before trial, was not impregnated by petitioner, but by someone else, and that this refuted her testimony that she would not have sex with petitioner because she was gay.  Petitioner claims that his counsel was ineffective for failing to expose the victim's bisexuality, or "impeachment evidence," or to test her credibility or to expose her bias.  Petitioner's defense at trial was that he and Owens engaged in consensual sex.  Although petitioner appears to argue that only Owens' testimony supported the conclusion that they did not engage in consensual sex, the state produced other evidence at trial, beyond Owens' testimony, to support this conclusion both directly and circumstantially.  First, the nurse who examined Owens at the hospital testified at trial that Owens' account of the assault was consistent with her medical findings during the examination.  (Exhibits to Answer Ex. 85 at 189.)  The nurse testified

that in her professional opinion, her findings were consistent with forcible sexual penetration.  (*Id*. Ex. 85 at 190.)  Additionally, a friend of Owens testified that she received a hysterical message in the middle of the night from Owens after the assault and a co-worker testified that Owens' behavior was altered and that she was upset after the assault.  (*Id*. Ex. 85 at 45-47, 158.)  The testimony of these two individuals circumstantially shows that Owens endured a traumatic event.  Finally, one of petitioner's prior cellmates from the Washoe County Jail testified that petitioner admitted to committing the sexual assault.  (*Id*. Ex. 85 at 245-53.)  In sum, even if petitioner's counsel had offered evidence of Owens' bisexuality and the paternity of her child, to call into question Owens' credibility, other evidence substantiates petitioner's conviction for sexual assault.  Petitioner fails to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, as required by *Strickland*.  Accordingly, the Nevada Supreme Court's rejection of petitioner's claim of ineffective assistance of counsel was neither contrary to nor an unreasonable application of clearly established federal law.  Because petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, this court denies relief on ground three.

**B. Ground Four**

In ground four, petitioner contends that his rights under the Sixth, Eighth, and Fourteenth Amendments were violated because trial counsel lost a valuable piece of evidence.  The alleged evidence in question is a card with the victim's phone number on it.  Petitioner claims that this evidence would have demonstrated, contrary to the victim's testimony, that they were not strangers.

Respondents argue that petitioner is unable to show who was responsible for the lost card and that even if he could make that showing, he cannot show prejudice because the evidence supporting his convictions is overwhelming.

In addressing this claim, the Nevada Supreme Court stated:

> Second, Steinhauer claimed that trial counsel was ineffective because counsel lost a card with the victim's phone number on it.  He asserted that this piece of evidence would have contradicted the victim's testimony that she was

not acquainted with Steinhauer.  The district court dismissed this claim finding that it could not find any improper conduct by his counsel because Steinhauer was unable to identify the party responsible for the loss of the card [footnote 6: Steinhauer was represented by different counsel at the preliminary hearing and at trial, and he could not identify which attorney allegedly lost the card.] and that Steinhauer failed to demonstrate that but for the loss of the card the outcome of his trial would have been different.  The record reveals that overwhelming evidence supported Steinhauer's convictions.  Thus, even if counsel lost the card with the victim's phone number, Steinhauer would not have been entitled to relief because the loss of the card would not have altered the outcome of the trial. [footnote 7: <u>See Strickland v. Washington</u>, 466 U.S. 668, 690, 693 (1984) (holding that to establish ineffective assistance of counsel a petitioner must demonstrate that his counsel's performance was deficient and he was prejudiced, such that the reliability of the verdict was undermined as a result of counsel's errors); <u>Warden v. Lyons</u>, 100 Nev. 430, 432, 683 P.2d 504, 505 (1984) (adopting <u>Strickland</u>).]

(Exhibits to Mot. to Dismiss Ex. 12. at 3-4.)

As discussed above with respect to ground three, in *Strickland*, the United States Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687).  In addressing petitioner's argument in ground four, the Nevada Supreme Court correctly identified the governing legal principle from *Strickland*.  As the Nevada Supreme Court noted, petitioner's convictions are supported by substantial evidence, and therefore, even if counsel had lost the card, its loss would not have altered the outcome of the trial.  Thus, petitioner failed to demonstrate prejudice. This court concludes that the Nevada Supreme Court reasonably applied *Strickland*. 28 U.S.C. § 2254(d)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This court denies relief on ground four.

## C. Ground Five

In ground five, petitioner claims that the trial court erred when it refused to allow counsel to withdraw.  Petitioner contends that he was denied his right to conflict-free counsel in violation of the Sixth and Fourteenth Amendments.

1    Respondents argue that this claim is procedurally defaulted because the Nevada Supreme Court

2 relied on Nev. Rev. Stat. § 34.810(1)(b) in concluding that petitioner had waived the claim by failing

3 to raise it on direct appeal.[2]

4    "Procedural default" refers to the situation where a petitioner in fact presented a claim to the state

5 courts but the state courts disposed of the claim on procedural grounds, instead of on the merits.  A

6 federal court will not review a claim for habeas corpus relief if the decision of the state court regarding

7 that claim rested on a state law ground that is independent of the federal question and adequate to

8 support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

9    The *Coleman* Court stated the effect of a procedural default, as follows:

10          In all cases in which a state prisoner has defaulted his federal claims in
            state court pursuant to an independent and adequate state procedural rule,
11          federal habeas review of the claims is barred unless the prisoner can
            demonstrate cause for the default and actual prejudice as a result of the
12          alleged violation of federal law, or demonstrate that failure to consider
            the claims will result in a fundamental miscarriage of justice.
13

14 *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).  The procedural

15 default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal

16 habeas cases.  *See Koerner v. Grigas,* 328 F.3d 1039, 1046 (9th Cir. 2003).

17    To demonstrate cause for a procedural default, the petitioner must be able to "show that some

18 *objective factor external to the defense* impeded" his efforts to comply with the state procedural rule.

19 *Murray*, 477 U.S. at 488 (emphasis added).  For cause to exist, the external impediment must have

20 prevented the petitioner from raising the claim.  *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

21 Ineffective assistance of counsel may satisfy the cause requirement to overcome a procedural default.

22 *Murray*, 477 U.S. at 488.  With respect to the prejudice prong of cause and prejudice, the petitioner

23 bears:

24          the burden of showing not merely that the errors [complained of]
            constituted a possibility of prejudice, but that they worked to his actual
25          and substantial disadvantage, infecting his entire [proceeding] with errors
            of constitutional dimension.
26

27
28    [2] Respondents also address this claim as an ineffective assistance of counsel claim. In reviewing
the petition, the court finds no basis to construe ground five as asserting a claim of ineffective assistance
of counsel.  Accordingly, the court addresses ground five as only stating a claim of trial court error.

1   *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170

2   (1982)).  If the petitioner fails to show cause, the court need not consider whether the petitioner suffered

3   actual prejudice.  *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Roberts v. Arave*, 847 F.2d 528, 530

4   n.3 (9th Cir. 1988).

5          In this case, petitioner raised the argument that the trial court erred when it did not allow counsel

6   to withdraw due to a conflict of interest in his post-conviction proceedings in state court.  In affirming

7   the district court's denial of petitioner's post-conviction petition on this ground, the Nevada Supreme

8   Court stated:

9                  To the extent that Steinhauer raised this claim outside the context
            of his ineffective assistance of appellate counsel claim, we conclude that
10          the district court did not err in dismissing the claim.  The claim was
            appropriate for direct appeal and was thus waived absent a showing of good
11          cause for failing to raise the claim earlier and actual prejudice.  See NRS
            34.810(1)(b), (3).  Steinhauer failed to demonstrate good cause or actual
12          prejudice.

13  (Exhibits to Mot. to Dismiss Ex. 12 at 4-5 n.8.)

14         The Nevada Supreme Court explicitly relied on Nev. Rev. Stat. § 34.810 as a procedural bar

15  when it declined to review ground five  (*Id.*).  The Ninth Circuit Court of Appeals has held that, at least

16  in non-capital cases, application of the procedural bar at issue in this case – Nev. Rev. Stat. § 34.810 –

17  is an independent and adequate state ground.  *Vang v. Nevada*, 329 F.3d 1069, 1073-75 (9th Cir. 2003);

18  *see also Bargas v. Burns*, 179 F.3d 1207, 1210-12 (9th Cir. 1999).  Therefore, this court finds that the

19  Nevada Supreme Court's holding that ground five is procedurally barred under Nev. Rev. Stat. §

20  34.810(1)(b) and Nev. Rev. Stat. § 34.810(3) was an independent and adequate ground for the court's

21  dismissal.  Petitioner does not argue otherwise, and does not present any argument concerning cause and

22  prejudice.  Accordingly, the court dismisses ground five as procedurally barred.

23  **V.  Certificate of Appealability**

24         In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28

25  U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th

26  Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).   Generally, a

27  petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

28  certificate of appealability.  *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

(2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* (quoting *Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further.  *Id.*  This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The court will therefore deny petitioner a certificate of appealability.

## VI.  Conclusion

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus (ECF No. 12) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

DATED this 28th day of March, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE